HIDELL v. DWINELL et al., administrators.

1. The court did not err in refusing to strike, on motion, certain parts of the pleas of the defendant. Said pleas, taken as a whole, set forth a good defence to the action.

2. Under the evidence act of 1889, a witness not a party to the case who is liable to the plaintiff if the action fails and is equally liable to the defendant if it succeeds, is competent to testify in behalf of either party. His interest is balanced.

3. An agent for the custody and management of a fund is not incompetent to testify in behalf of his principal against an administrator, save as to transactions with the intestate which took place in dealings or in alleged dealings between the witness as agent and the intestate. If both parties admit or contend that the transaction under investigation involved no element of agency, but was one between the agent acting for himself as principal on

the one hand and the intestate as principal on the other, the agent is a competent witness, under the evidence act of 1889.   In other words, he is not to be regarded as an agent at all within the intention and meaning of that act.          *Judgment reversed.*

August 27, 1892.   Argued at the last term.

Husband and wife.     Estoppel.     Witness.     Agent. Before Judge MADDOX.     Floyd superior court.     March term, 1891.

Action by Mrs. Hidell against the administrators of Dwinell.   She excepted to the grant of a nonsuit, to the rejection of the testimony, and to the overruling of her motion to strike portions of the pleas of the defendants. She alleged that on January 16, 1885, her husband, having previously bought from Dwinell a newspaper known as the " Courier," with presses, etc., for $6,000, and paper and material for use therein for $227.04, did pay Dwinell on the purchase $4,227.04, which amount so paid was a part of petitioner's separate estate, and Dwinell received and appropriated the same to his own use, knowing at the time he received it that it was her property and part of her separate estate.   By amendment she set forth that the sum alleged to have been paid by her husband to Dwinell consisted of a promissory note, a city bond and cash.

The defendant's pleas were, in substance, as follows: If plaintiff was ever the owner of the money sued for, on or about January 15, 1885, she loaned it to her husband and he became the owner of it and debtor of his wife.   On March 18, 1885, Dwinell sued out an attachment against Hidell for the recovery of $2,113.43, with interest for balance of purchase money claimed to be due him for the purchase of the " Rome Courier," its presses, etc., which was levied on the property, and at the ensuing term of the superior court filed his declaration in attachment.   Hidell filed a bill returnable to the same term, for a rescission and cancellation of the contract for the sale and purchase of the newspaper, out

of which the indebtedness grew, on the ground that the sale and purchase were procured by false representations and fraud on the part of Dwinell, and on other grounds therein stated. In May, 1886, when the attachment case came on for trial, an order was passed allowing Hidell to file and use the bill as his equitable plea; whereupon the case was tried, and the bill and amendments used and pleaded as an answer to the attachment suit. During the progress of the trial Mrs. Hidell was, on her own motion and petition, made a party defendant to the suit, and she came into court and set forth in her petition a mortgage dated December 14, 1885, given by her husband on the Courier property to secure a note made by him to her, bearing the same date, for $3,687.65, and as the holder and owner thereof offered to surrender and cancel this mortgage, and joined her husband in the suit for the rescission of the contract for the purchase by him from Dwinell of the Courier, and in her petition stated that she wished with her husband a cancellation of said purchase, and joined him in the prayer in his answer. This prayer was, that the sale be cancelled and set aside, and Dwinell required to refund to Hidell the sum paid him, with interest; that an account be taken of the amount since paid out by Hidell in running the property, or proper compensation for Hidell's services therein, and of all amounts received by him from the business up to the time when he should, under the decree, redeliver the property to Dwinell; that Dwinell be required to reimburse him such amount as he might be found to have paid out in excess of such income and compensation for his services; and that the rescission should include also the purchase of what Dwinell called " stock," and the rent contract of the rooms for the business aforesaid; or, should the court for any cause think proper not to set aside the sale, then (though Hidell did not want the

property at any price, and would so take it only upon compulsion) that he might apportion the price agreed to be paid as the facts and the principles of equity might require; that the attachment suit might be perpetually enjoined, and such other and further relief granted as was proper. Mrs. Hidell in her petition prayed also for general relief. The trial resulted in a verdict for Dwinell for $1,500 with interest, and the prayers of Hidell and his wife for rescission and other relief were denied. On the trial of the case a mortgage made by Hidell on February 17, 1885, to his wife on the Courier property, recorded on March 19, 1885, to secure a note of Hidell given on that day to one Robinson as trustee for Mrs. Hidell, and for money loaned by her to him, was produced in response to a notice of plaintiff's counsel, and permitted by her to be read in evidence as a cancelled mortgage, for the purpose of rescinding the sale, it being settled law, well known to her, that the original status of the parties had to be preserved or restored to authorize a rescission of the trade. This mortgage had an entry in the handwriting of Robinson thereon, dated June 2, 1885, that it was cancelled and satisfied and the property freed from its lien. Mrs. Hidell was at that time the owner and holder of this mortgage, Robinson having been made her trustee at her request, as appeared by a letter (set out in the plea) in answer to one written by her or her husband as her agent. This letter from Robinson was dated February 13, 1885, and directed her to have Hidell make to him, Robinson, as trustee for her and her children, a bill of sale or mortgage on the Courier for the money she loaned him to be put in the paper, and have it recorded. Mrs. Hidell took the note of her husband for the money, and the same was given to Robinson, trustee, and the mortgage made to him for her and by her direction and consent. The note

and mortgage cover the same debt now sued on. After the verdict in favor of Dwinell was rendered, Hidell and his wife moved for a new trial, which motion was overruled and no exception was taken thereto; so that the verdict and judgment thereon became final and conclusive between the parties. The money now sued for is the same money as that embraced in and secured by the mortgages mentioned, and the same were involved in the suit and finally adjudicated by the judgment thereon; and Mrs. Hidell, having thus had her day in court, and having in the suit claimed such relief as she desired (and she could therein have claimed any and all relief allowed by law, and was bound to set up in that suit all her demands, both legal and equitable, that there might be an end of litigation), is concluded and estopped to sue defendant or his administrator again. After the final termination of the suit mentioned, and in July, 1887, the execution in favor of Dwinell, issuing from the judgment, was levied on the Courier property, which, in September, 1887, was sold by the sheriff and bought by Dwinell for $2,500, the amount due him on the *fi. fa.*, and on another *fi. fa.* for the rent. On the day of sale Mrs. Hidell foreclosed both of the mortgages by her own oaths, signed with her own name, and on that day caused executions to be issued therefrom and put in the hands of the sheriff, and on the day after the sale she made a written demand on oath on the sheriff, requiring him to take a forthcoming bond, on the ground that the property was subject to her mortgage. Afterwards, in September, 1887, Dwinell brought a rule against the sheriff for the purpose of having the proceeds of the sale applied to the *fi. fas.* in his favor, which rule the sheriff answered, and Mrs. Hidell came into court, caused herself to be made a party to the rule and claimed the money on her *fi. fa.* issued from the mortgages, setting up again that

Hidell was her debtor on both the mortgages. A trial was had on the pleadings made up in this case, and a verdict found against the Robinson mortgage and against Mrs. Hidell, it having been made to appear to the court that her other mortgage had not been recorded in time. Afterwards she moved for a new trial which was granted, and on the second trial a verdict was rendered against said mortgage and against her. On both of these trials she testified that she loaned the money covered by the Robinson mortgage to Hidell to purchase the Courier with. After the last verdict was rendered she again moved for a new trial, which motion was overruled, and she filed her bill of exceptions and took the case to the Supreme Court, where it is now pending. The money sued for in the present case is the same debt of Hidell and the same loan claimed to have been made to him by her as that described in the mortgages, and which she sought to enforce against Hidell's estate, the Robinson mortgage and mortgage *fi. fa.* having been so set up by her as her property alone, her trustee having died before the trial. Having sued Dwinell in his life for a rescission of the sale and other relief on this same claim, and a final verdict and judgment having been rendered in that suit against her, and having had full opportunity to set up all her claim and assert all her rights in the equity suit, she is concluded and estopped by that judgment to further sue and harass defendant; and by reason of her suit for the fund on the rule, her sworn foreclosure of her mortgages, her affidavit demanding a forthcoming bond and her testimony in the rule case, she is estopped and cannot maintain this action. Having claimed the money on the rule and having had two trials on her claim, and still seeking to subject the money to her *fi. fas.* as the money of her husband on the debts due to her by him for money loaned, she is estopped now

to set up a contrary state of facts, to ignore her husband as her debtor and sue defendant for the same. By way of amendment to the plea, it was alleged that Mrs. Hidell, being dissatisfied with the judgment refusing her a new trial on the rule against the sheriff, took the case to the Supreme Court, and again, at the March term, 1890, set up her mortgage *fi. fa.* and contended for the fund with Dwinell upon the ground that she had a prior lien thereon as the property of her debtor, Hidell, and after argument the case (reported in 85 *Ga.* 452) was decided against her; so that the case is *res adjudicata*, and Mrs. Hidell is estopped and barred by the proceedings and admissions set forth, upon which admissions Dwinell acted to his injury and to her benefit; and said admissions of record are conclusive evidence (if the money was once hers, which is denied) that she had loaned it to her husband, or at least are evidence of such a loan, and may be pleaded and submitted to the jury on the trial of the case. Attached to the pleas or considered in connection therewith, were various exhibits as indicated therein.

The plaintiff moved to strike all those portions of the pleas which set up as a defence the proceedings and judgment or decree in the attachment suit of Dwinell against Hidell, the equitable plea or cross-bill of Hidell and the petition of Mrs. Hidell to be made a party therein, and the proceedings and judgment in the suit of Dwinell against the sheriff, upon the ground that none of said proceedings or the judgments, nor all of them together, constituted any defence to the suit then on trial, or had any relevancy thereto. The motion was overruled.

Plaintiff then introduced testimony to the following effect: In January, 1885, she owned a separate estate derived from her grandfather, consisting of bonds, mortgages, real estate and money, situated and held in Rome

and Philadelphia. Her husband had the custody and management of it. She knew of the purchase by her husband from Dwinell in January, 1885, of the Rome Courier property. About the 8th of January, 1885, Mr. and Mrs. Hidell, Dwinell and others were at a dinner together. In the course of conversation, in the hearing of Dwinell Hidell spoke of his lack of means and said that his wife had separate property and means of her own. The substance of what he said was, that he had nothing, that the money he was investing in a house and lot adjoining was his wife's property. Mrs. Hidell, acknowledging the fact also, said she had no interest apart from her husband. Hidell said that his marriage had been opposed by his wife's stepfather on account of Hidell's lack of means, and that a very strict marriage settlement had been drawn to prevent his squandering her property, as her stepfather seemed to fear. No allusion was made in this conversation to the purchase of the Rome Courier. Plaintiff also introduced a receipt from Dwinell to her husband dated January 16, 1885, for $4,000, part purchase money for Courier office, sold the day before to Hidell for $6,000, balance to be paid cash.

Plaintiff then offered her husband as a witness, and proposed to prove by him, that on the 14th day of January, 1885, he concluded a trade with Dwinell for the purchase from him of the Rome Courier newspaper property at $6,000, and on that day took possession of the property and began the publication of the paper; that two days thereafter he paid Dwinell on said purchase $4,000, shown in a receipt (in evidence) from Dwinell; that this payment was made in a note on Jas. B. Hill for $1,300, on which $300 interest was due, and a bond of the city of Rome for $500, and the balance, $2,197, in money; that about the same time he paid Dwinell $227.06 on the purchase of some stock of

paper and material which he bought with the news-
paper establishment; that all these, to wit, the money,
bond and note which he so paid Dwinell, were the
property of his wife, the plaintiff, being a part of her
separate estate; that he had stated to Dwinell while ne-
gotiating with him for said purchase that he (Hidell)
was especially desirous to have accurate and full in-
formation as to the condition of the property, etc., be-
cause if he made the purchase he should use his wife's
means to pay for it; and that some days before said
negotiations began and without reference to it, he had
incidentally informed Dwinell that he (Hidell) had no
means of his own, and that the means he was operat-
ing with belonged to his wife. This testimony was ob-
jected to, on the ground that the witness was interested
in the result of the suit, and Dwinell, the other party to
the transaction, was dead; and because of the follow-
ing facts, which were admitted by plaintiff to be true,
showing, as argued, that the witness had acted as an
agent or attorney for his wife in the several matters re-
ferred to : that both the mortgages given by him to his
wife, set out in defendant's plea, were in his hand-
writing, the one for $4,500 having been given to secure
the payment of the money now sued for; that he wrote
for her the affidavits foreclosing the mortgages, repre-
sented her at the sheriff's sale of the mortgaged prop-
erty, wrote the affidavit made by her to require Dwinell,
the purchaser at that sale, to give bond for the forth-
coming of the property to answer her mortgages, and
signed as her agent the agreement between her and
Dwinell, waiving such bond, etc., all of which writings
and facts are set forth in the defendant's plea or exhibits
attached thereto. The court sustained the objection
and rejected the testimony. Counsel for plaintiff then
stated that he had no direct evidence that the money
and effects in question were the property of plaintiff,

other than the proposed testimony of her husband. Whereupon the court . rendered a judgment of nonsuit.

C. N. FEATHERSTON, for plaintiff.

C. ROWELL, for defendants.