CRAWFORD *et al. v.* PARKER, administrator, *et al.*

1. The issue being whether or not the defendant's intestate, at the time of receiving from the plaintiffs' guardian certain money, took the same with knowledge of the fact that it belonged to the latter's wards, a surety on the guardian's bond was not a competent witness to prove such knowledge on the part of the deceased. As a party to the case, the surety would be disqualified from testifying, and is therefore, because of his interest in the result of the case, excluded from testifying by the evidence act of 1889.

2. In such case the guardian was a competent witness to prove the fact indicated, his interest in fixing liability on the estate of the defendant's intestate being exactly counterbalanced by the fact that he would be liable over to the administrator for any amount which might be recovered from the latter in the action against him by the wards.

April 29, 1895. Brought forward from the last term.

Petition for injunction. Before Judge JENKINS. Wilkinson county. July 11, 1894.

HARDEMAN, DAVIS & TURNER, for plaintiffs.

J. W. LINDSEY, for defendants.

SIMMONS, Chief Justice.

George and Margaret Crawford filed their equitable petition against J. A. Parker, administrator of W. C. Parker, and against Hughes, sheriff, alleging that their mother died intestate in December, 1872, leaving them a large estate consisting of realty and personalty; that their father, George G. Crawford, was appointed their

guardian and took possession of said estate; that he managed and controlled it in his individual capacity; that in 1880 he purchased of W. C. Parker a plantation and paid him, out of the funds which he (Crawford) held for the plaintiffs, about $2,600, the first and second payments on the land; that Parker made him a deed in his individual capacity, and took a mortgage for $1,500 to secure the payment of the balance of the purchase money; that at the time Parker received the money for the land, he knew it was not the individual money of Crawford but was a trust fund belonging to the plaintiffs; that after Crawford had taken the deed to himself individually, he made to himself as guardian a deed to the same land, the consideration being $1,000, subject to the mortgage given to Parker for the balance of the purchase money, and a mortgage given to Comer & Co. for $6,500; that after Parker's death his administrator, J. A. Parker, foreclosed the $1,500 mortgage and had an execution levied on the land for the amount thereof. They prayed that this sale might be enjoined until their rights in the land could be ascertained; that inasmuch as Parker participated with their guardian in the misapplication of the trust funds, with full knowledge of the fact, a judgment be recovered against his estate for the full amount thus misappropriated; and that they also have a special judgment against the land, and that their judgment be paid first, it being alleged that the land was not worth the purchase money and the amount of Comer & Co.'s mortgage.   The administrator of Parker answered the petition, and denied that his intestate had any knowledge that the money paid by Crawford for the land belonged to the plaintiffs, and denied all charges of collusion. . Upon the hearing of the application for injunction, the plaintiff tendered in evidence the affidavits of Crawford, the guardian, and J. T. Crawford, the security on the guardian's bond, to prove that Parker,

the intestate, knew that the money invested in the land was the money of the wards. Upon the objection of counsel for the defendants, the trial judge ruled out this evidence. No other evidence being offered tending to show notice on the part of Parker, the judge refused the injunction. The plaintiffs excepted to this judgment and to the ruling out of the affidavits.

1. There was no error in excluding the affidavit of J. T. Crawford, the security on the guardian's bond. He was undoubtedly liable to the wards for any misappropriation of the trust funds by the guardian, and was therefore directly interested in the result of this proceeding. If he could enable the wards to recover the money misappropriated, it would relieve him from liability on his bond to that extent. If he were a party to the cause he could not testify, and, under the act of 1889, the other party to the cause being dead, he was disqualified as a witness, that act declaring that "where a person not a party, but a person interested in the result of the suit, is offered as a witness, he shall not be competent to testify, if as a party to the cause he would for any cause be incompetent." (Acts 1889, p. 86, section I, (d).)

2. We think the court erred in rejecting the affidavit of the guardian. As guardian he was liable to his wards for any *devastavit* he might commit in the management of their estate. If he misapplied any of their funds in purchasing property in his own name, and the vendor had notice that the money used for this purpose belonged to the trust estate, the wards are entitled to recover the same from the vendor; and if the money thus misappropriated is recovered from the vendor, he can sue and recover the same from the guardian. So that the guardian is liable in either case. It seems to us, therefore, that his interest is evenly balanced. Being liable in either event to the one or the other, his interest does not disqualfy him as a witness. *Hidell* v. *Dwinell,*

89 *Ga.* 532.   It is argued in reply to this, that as the guardian is insolvent and nothing could be collected from him if a judgment should be obtained against him by the administrator of Parker, his real interest is with the children, and there is a greater inducement for him to testify in their behalf than in behalf of the defendant.   We do not think this takes the case out of the rule above stated.   A judgment thus obtained, even though he might have no property at the time of its rendition out of which the same could be satisfied, would be a lien against any he might subsequently acquire during the rest of his lifetime, if the proper entries were made to prevent dormancy; and it is certainly to the interest of every person to prevent a judgment from being rendered against himself.   The argument here mentioned might have great weight with a jury in passing upon the credibility of the witness, but is not a sufficient reason for holding him incompetent.

*Judgment reversed.*