## 26698. ROGERS v. CARMICHAEL.

DECIDED JULY 9, 1938. REHEARING DENIED JULY 23, 1938.

344

*Brown & Brown, J. Wightman Bowden, Ernest M. Smith,* for plaintiff.

*Beck, Goodrich & Beck, E. L. Reagan,* for defendant.

MacINTYRE, J.  Frank Rogers brought this suit against Andrew Carmichael as the sole surviving partner of Carmichael & Hopkins, to recover damages for personal injuries caused by alleged negligence of A. V. Hopkins, the deceased partner.  On the trial of the case the only evidence introduced was that of the plaintiff. After the plaintiff had closed, certain testimony given by him was excluded by the court; and on motion the court granted a nonsuit.  To this ruling, and to the exclusion of the plaintiff's testimony, he excepted.  The allegations in the petition are substantially as follows: Carmichael & Hopkins was a partnership composed of Andrew Carmichael and A. V. Hopkins, with an office and place of business in McDonough, Georgia.  The partnership was engaged in the selling of automobiles, trucks, and automobile accessories.  To carry on this business both partners went to nearby towns to solicit business.  On October 4, 1934, the firm was dissolved by the death of A. V. Hopkins, and the plaintiff brings this suit against Andrew Carmichael as the sole surviving partner of the firm of Carmichael & Hopkins.  The partnership is indebted to the plaintiff $5000, by reason of the following facts: On the date mentioned the plaintiff was the prospective purchaser of an automobile from the partnership, and was riding with Hopkins for the purpose of demonstration, having been invited by Hopkins. They rode along a country road until they reached the State highway.  Hopkins was driving, and when he reached the highway increased the speed of the car to sixty miles per hour or faster. Plaintiff cautioned him to slow down, but he replied that he could handle the car.  He increased the speed to seventy miles per hour, and on rounding a curve he lost control of the car, and the car left the road, ran over an embankment and against a tree, striking the tree about fifteen feet above the ground.  The car was demolished, the plaintiff was seriously injured, and Hopkins was killed.  By reason of these injuries the plaintiff incurred stated hospital and doctor's bills.  He was without fault, and the negligent acts of

Hopkins were the sole and proximate cause of the injuries to the plaintiff, the negligence being in the following particulars: first, in driving the automobile at an illegal rate of speed, over the protest of the plaintiff; second, in failing to check the speed of the car when approaching a sharp curve; third, in failing to keep the car under proper control in rounding the curve, and especially so at night as on this occasion. Wherefore the plaintiff prays for judgment against Carmichael & Hopkins, and Andrew Carmichael as the sole surviving partner of said firm of Carmichael & Hopkins, for stated items of damage amounting to $5000; and further prays for process directed to the defendant partnership, and to Andrew Carmichael as sole surviving partner, requiring him to be and appear at the next term of the court.

On the trial the plaintiff as a witness was asked the following questions, and made the following answers: Q. "Do you know how the accident happened? A. Well, too much speed when we hit the curve." The court sustained an objection by counsel for defendant, that the plaintiff could not testify as to transactions or communications with the deceased partner. Q. "When you got to the top of the hill at Mr. Mitchell's before you got to the curve, about what rate of speed were you going? A. Around sixty-five or seventy miles an hour. Q. In going down that slant to the curve, was the speed increased any? A. Sixty-five or seventy miles an hour. Q. Now, what was the cause of the accident at that point? A. Well, the speed, and he just lost control on this curve, and it left the road." Counsel for defendant interposed the same objection, and it was sustained. Q. "That night after you left your store where did you go? A. Dropped in the drug-store for a few minutes, and then went across town and dropped in Clinton Hightower's place, and walked from there to the Ford place. Q. Who did you see there? A. Hopkins. Q. Did he say anything to you? A. He did. Q. What did he say to you? A. I was at the store during the day. I did all the work by myself, and he came in and suggested that we go. Q. Suggested that you take a ride? A. Yes. Q. Which way did you go from there? A. Toward Locust Grove, down route 42. Q. Did you say anything to Mr. Hopkins about it [referring to the speed of the car in approaching the curve?] A. I did. I told him it looked like he was driving too fast in approaching the curve, and he said, 'Well, I have got the

car under control. I can handle it.'" The same objection to this testimony was interposed, and the objection was sustained for the same reason. Q. "Was the accident that happened to you in which you were injured in any way due to anything you did? A. No, sir. Q. What were you doing at the time of the accident? A. Sitting on the front seat." The same objection was interposed and sustained.

■ If, as ruled by the court, the testimony of Rogers, the plaintiff, was incompetent as relating to "transactions" or "communications" between Rogers and Hopkins, the deceased partner, because prohibited by the Code, § 38-1603 (2, 5), the judgment granting a nonsuit should be sustained. Paragraph 2 of that Code section reads as follows: "Where any suit shall be instituted or defended by partners, persons jointly liable or interested, the opposite party shall not be admitted to testify in his own favor as to transactions or communications solely with an insane or deceased partner, or person jointly liable or interested." "The testimony which can not be admitted where one of the parties is deceased must concern a 'transaction or communication had directly with the deceased, . . of such character that the deceased, if alive, could deny, rebut, or explain the statement of the other party.'" *Crews* v. *Crews,* 174 *Ga.* 45, 47 (162 S. E. 107). In *Whitley* v. *Hudson,* 114 *Ga.* 668, 670 (2) (40 S. E. 838), the court ruled that the suit was not instituted against Whitley by the "partners," but was brought by the survivor of the partnership in his representative capacity, and not by the living partner in his individual capacity, the only other partner being dead at the time of the filing of the petition; and held that said paragraph 2 was not applicable, and that the defendant Whitley should have been allowed to testify. In the instant case the suit was instituted after the dissolution of the partnership, and against the survivor of a dissolved partnership in his representative capacity, and was defended by this survivor of the partnership in his representative capacity; and therefore, under the ruling in *Whitley* v. *Hudson,* the Code paragraph cited above is not applicable. This decision by the Supreme Court of Georgia, never having been reversed or over-ruled, is binding on this court. With reference to § 38-1603 (2), the instant case and the *Whitley* case are distinguishable from *Morgan* v. *Johnson,* 87 *Ga.* 382 (13 S. E. 710), in that in the

*Morgan* case the suit was not against the survivors of the partnership of Harrold, Johnson & Company, but was against the living partners in their individual capacity. The suit in the *Morgan* case was defended by the "partners," and the Supreme Court held that the plaintiffs themselves, under the Code, § 38-1603(2), were not competent witnesses against the partnership as to transactions or communications with one of the partners who was deceased; whereas in the case sub judice the suit was defended by the representative of the dead (dissolved) partnership.

■ The court was right in excluding the testimony above referred to, as being prohibited by the Code, § 38-1603(5), which reads as follows: "No agent or attorney at law of the surviving or sane party, at the time of the transaction testified about, shall be allowed to testify in favor of a surviving or sane party, under circumstances where the principal, a party to the cause, could not testify; nor shall a surviving party or agent testify in his own favor, or in favor of a surviving or sane party, as to transactions or communications with a deceased or insane agent, under circumstances where such witness would be incompetent if deceased agent had been principal." As applied to the alleged facts in this case, was Hopkins, before his death, the agent of the partnership, by reason of the fact that he was a partner thereof, within the contemplation of paragraph 5 of section 38-1603? We think so. When this case appeared in the Supreme Court, 184 *Ga.* 496, supra, that court there held that Hopkins was not only the agent of the partnership, but was in fact its alter ego in matters relating to the partnership business. And thus we think that if Hopkins, under the circumstances, had been sued as the principal, he would have been incompetent, and therefore Rogers, the plaintiff, was incompetent to testify against the defendant who was being sued as the survivor of the partnership, and who is the present representative of the dissolved (dead) partnership, administering its assets and liabilities. *Morgan* v. *Johnson,* supra; *Sherman* v. *Lane,* 139 *Ga.* 781 (78 S. E. 123); *Hinson* v. *Carswell,* 17 *Ga. App.* 451 (87 S. E. 697). In *Eley* v. *Reese,* 171 *Ga.* 212 (155 S. E. 24), there were no dealings during the life of the deceased principal, while in the instant case there were dealings through its agents with the principal during its life, that is, before its dissolution. See, in this connection, *Hidell* v. *Dwinell,* 89 *Ga.* 532 (3) (16 S. E. 79). In

construing § 38-1603, and the exceptions therein contained, the Supreme Court of Georgia has held "that it is safer to adhere to the plain letter of its terms, and thus avoid the confusion which arose from the attempted liberal constructions of the evidence act of 1866." *McLendon* v. *Baldwin,* 166 *Ga.* 794, 796 (144 S. E. 271). Therefore we are of the opinion that under paragraph 5 of that section the plaintiff was incompetent to testify in his own behalf as to "transactions" and "communications" had with the deceased agent alone, under' the circumstances which were such that the witness would have been incompetent to testify if the deceased agent had been sued as the principal. *McLendon* v. *Baldwin,* supra.

In the instant case the plaintiff was incompetent to testify as to the excessive speed of the automobile. There was an alleged agreement by which the deceased agent was to demonstrate the automobile, and while demonstrating it in pursuance of said agreement the deceased agent and driver of the car put on the gas and caused the speed of the car to be 65 or 75 miles per hour, and it turned over on a curve in the road, injuring the plaintiff and killing the agent. The running at such a rate of speed would have been a negligent act on the part of the deceased, and was one of the acts of negligence alleged in the petition; and a jury would likely have found a verdict for the plaintiff if nothing else had appeared to show that the plaintiff was not entitled to recover. The agent and driver of the car, being dead, could not contradict the plaintiff's evidence if it were untrue, and on this vital point the defendant would have been at the mercy of the plaintiff. *Mayfield* v. *Savannah, Griffin &c. Ry. Co.,* 87 *Ga.* 374, 377 (13 S. E. 459). The driving of the automobile at an excessive rate of speed, under the facts alleged in the instant case, was not a single, independent, physical act of the deceased, with which the plaintiff was in no way connected by communication or action; for the car was being run in pursuance of an alleged agreement between the parties to demonstrate it. *Garrick* v. *Tidwell,* 151 *Ga.* 294, 301 (5) (106 S. E. 551). The present case differs on its facts from *Atlanta, K. & N. Ry. Co.* v. *Roberts,* 116 *Ga.* 505, 510 (42 S. E. 753), in which there was no act of the *two parties* or agreement by both of them to enter into the transaction. It was there held that the speed of the train was an independent physical fact which

did not involve any communication or transaction with the decedent, and was not within the rule excluding such communications and transactions, in that "the plaintiff was not connected with it by any act of his." The plaintiff was simply loading freight on a stationary car placed there for that purpose, and the engineer of the switch-engine, without the consent or knowledge of the plaintiff, coupled the engine to the car which the plaintiff was loading, and began switching it around in the yards. Thus the plaintiff was being "taken for a ride" without his consent; and until the plaintiff was voluntarily jumping from the car, there was no "transaction" between the plaintiff and the engineer, the agent of the defendant company, with which the plaintiff was voluntarily connected. In short, the speed of a train or automobile is not, under any and all circumstances, an independent physical fact within the meaning of the Code, § 38-1603.

*Judgment affirmed. Broyles, C. J., concurs. Guerry, J., dissents.*

GUERRY, J., dissenting. The evidence for the plaintiff was sufficient to show that he was a prospective purchaser of a Ford automobile; that Carmichael and Hopkins were Ford dealers, and each had been trying for several days to sell or exchange with the plaintiff a Ford for his Chevrolet car; that on the night of the injury Hopkins was demonstrating the Ford car to the plaintiff with the demonstrator car owned by the partnership; that while they were riding toward the junction of the Jackson highway with the McDonough and Griffin highway the injury occurred; and that the Jackson road slopes toward the McDonough and Griffin road for one fourth of a mile, and enters it at a sharp curve. A witness who lived at this intersection testified that she heard the crash, and immediately ran out of her house and found Hopkins and Rogers in the car, which had come from the Jackson highway down the slope. Both were unconscious. Hopkins died, and Rogers was badly injured. Hopkins was in the driver's seat under the wheel. "The car left the road on the right-hand side of the curve, it struck the bank first, and then struck a tree. When I got there the car was wrapped around the tree. It struck the tree above my head. The limbs were bruised and scarred above my head." The Griffin and Jackson highway is a paved road, eighteen feet wide, and in good repair. The point of the curve is in front of the house

of the witness. The car was going towards Griffin. "The tree I am talking about is this side the windmill, going towards Griffin. It sits about six feet from the pavement., There is a little bank between the pavement and the tree. The car hit the bank first, then passed in front of the windmill and hit the tree. The bank is about thirty inches high." The car was a four-door sedan.

. I think it was error to grant a nonsuit. The Code, § 38-123, declares: "In arriving at a verdict, the jury, from facts proved, and sometimes from the absence of counter evidence, may infer the existence of other facts reasonably and logically consequent on those proved." I think the evidence in this case was sufficient to show that the plaintiff was riding in the car as a prospective purchaser, and was not a guest within the meaning of the law. "The question who is a guest within the contemplation of a statute fixing liability of the owner or operator of a motor vehicle for injury to a guest is largely a question for determination in the individual case. The fact that the person pays no compensation but is riding for pleasure upon invitation of the owner or operator gives him the status of a guest. The compensation, however, which will take him out of this class need not be a money compensation, nor need it pass from the passenger to the driver. A prospective buyer of an automobile, who, at the invitation of a dealer, is riding therein for the sole purpose of ascertaining. whether it complies with his requirements, or a prospective purchaser of real estate, who, at the invitation of a real-estate company, is riding in an automobile hired by it and used to carry prospective purchasers to and from the tract, is not a guest within the meaning of these statutes. A high-school student rightfully riding in a school bus is not a guest within the meaning of a statute defining a 'guest' as a person who accepts a ride in any vehicle without giving compensation therefor. An expectation of compensation, however, has been held insufficient to prevent one from being a guest. The question sometimes resolves itself into one of fact for the determination of the jury or of the trial court, with which determination the reviewing court will ordinarily not interfere. Such a statute should not be extended by construction beyond the correction of the evils and attainment of the objects sought by it, nor should it be so restricted as to defeat or impair those objects. When the guest relationship begins depends upon the facts of the individual case. One

whose fingers were injured in the door before the car was started was held to be a guest within the meaning of the statute. On the other hand, one invited to get into an automobile and wait there until the owner had finished his dinner, when he would take her to her home, is not a guest, where she was injured when the door of the car fell off as she tried to open it to enter." 5 Am. Jur. § 239; 85 A. L. R. 1365-67.

The defendants owed to the plaintiff the same duty they would have owed to him as a customer in their store—ordinary care to prevent injury to him. It may therefore be said that "where the physical facts surrounding an occurrence are such as to create a reasonable probability that the occurrence—and the consequent injury—resulted from negligence, the physical facts themselves are evidential, and may or may not furnish evidence of the particular negligence alleged." *Sinkovitz* v. *Peters Land Co.*, 5 *Ga. App.* 788 (2-a) (65 S. E. 842). In *Ga. Ry. & El. Co.* v. *Harris*, 1 *Ga. App.* 714 (58 S. E. 61), it was said, "Where a plaintiff in a civil case supports his action solely by circumstantial evidence, before he is authorized to have a verdict in his favor, the testimony must be such as to reasonably establish the theory relied upon, and to preponderate to that theory, rather than to any other reasonable hypothesis. . . The circumstances shown must in some appreciable degree tend to establish the conclusion claimed." The conclusion claimed, or the grounds of negligence claimed in this case are: driving the car at a high and excessive rate of speed upon a public highway, more than sixty miles per hour, failing to check the speed, on approaching a sharp curve, to a legal rate of speed, so that the car might take the curve with safety, and in failing to keep the car under proper control, so as to round said curve with safety, and particularly so in driving at night. Quoting again from the *Sinkovitz* case, supra: "If the extraordinary character of the occurrence is sufficient to raise an inference of the negligence alleged, a prima facie case is established" and it is error to award a nonsuit. "There are cases where, in the absence of proof of any external cause, and the accident is of a kind which does not ordinarily occur without negligence, a jury may infer the want of due care from the mere happening of the occurrence; prima facie such negligence will be attributed to the person charged by law with the duty of maintaining and managing the

thing causing the injury." *Chenall* v. *Palmer Brick Co.*, 117 *Ga.* 106 (2) (43 S. E. 443); *Gainesville Coca-Cola Bottling Co.* v. *Stewart*, 51 *Ga. App.* 102, 104 (179 S. E. 734). While it is true that the jury is not authorized to draw an inference of negligence from the mere fact of the occurrence, the attendant circumstances may well warrant an inference of negligence. Such an inference is an inference of fact which the jury may be authorized to draw but are not compelled to draw. In the present case I think the facts, such as the curve, the 30-inch bank, that the automobile struck the tree at a point above the head of the witness, and the resultant damages, were sufficient to authorize an inference by the jury, if they saw fit, that the speed and lack of control by the driver of the car at the curve, amounted to ordinary negligence.